[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including without limitation, those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)"
R.I.G.L. 8-2-11.1 provides in pertinent part that
 Such administrator/master may be authorized (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties (3) To require the production before him of books papers vouchers documents and writings: (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above a hearing was held on the above referenced claim on October 12, 1993 and June 6, 1994. At the conclusion of the hearing the parties submitted Post-Hearing Memoranda.
Claimant was the owner and operator of a dry cleaning establishment located across the street from the Atwells Ave branch of Heritage Loan Investment. Claimant testified that he knew Joseph Mollicone. Jr., former president of Heritage as a customer of his business. On or about April 12, 1990. Claimant alleges to have placed $23,100 in cash in Heritage after a discussion with Mollicone about possible investment opportunities. This resulted in a Christmas Club account with the number 02-29-900695-8 being opened in the Claimant's name. This account is in fact recorded in the computer records of Heritage. However later on that same day the records of Heritage show that account number being closed out.
Claimant has introduced as evidence of the Claimed Account a Christmas Club account form used by Heritage. On August 2, 1990. Claimant alleges that an additional $21,900 was placed in the Claimed Account. This transaction is reflected on the Christmas Club form by a handwritten rotation but was never entered on the computer records of Heritage No savings deposit or withdrawal slips were produced for this account.
When a party makes a claim for funds allegedly on deposit at a financial institution the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311. 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit. thrift certificate investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose regardless of the legal relationship thereby established including without being limited to escrow funds funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association funds deposited by debtor to meet maturing obligations funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit and withheld taxes Provided that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association or under condition that receipt there of immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986) the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1), it must be shown that; (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings."
In the instant case, Claimant's testimony is simply incredible. Claimant either knew or should have known that he was not opening an account in the usual course of business at Heritage. Claimant testified that he opened a term account at the Heritage office on April 12, 1990 yet the computer records of Heritage reflect an account opening at a time before the Atwells Avenue branch was open for business As evidence of this term account he received a Heritage document clearly labeled as a Christmas Club. No deposit slips or withdrawal slips were ever presented at the institution.
The second deposit in August is noted by a handwritten notation by Mollicone and the Claimant explains this as being a result of the computer being "down" Yet at no time, did the Claimant attempt to have this deposit recorded in the records of Heritage. This Court can only conclude that this is because he was aware that the transactions were no in the ordinary course of business at Heritage.
The Claimant expects this Court to believe that he opened a term account paying six per cent interest yet as evidence of this he presents a Christmas Club account that pays no interest and contains no notation of any maturity date whatsoever.
In sharp contrast to the Claimant is the testimony of Mollicone. He claims that the original transaction took place at the Claimants place of business not at Heritage This time frame matches the time that Heritage's computer, miraculously not "down" that day, has recorded. Mollicone states that Claimant had funds that he wished to invest and discussed his options with a respected officer of a local financial institution. Mollicone placed Claimant's cash in a Christmas Club Account at Heritage while Claimant considered his options. Shortly thereafter. Claimant decided to entrust his funds with Mollicone and the account was removed from the Heritage computer. In short, Mollicone's testimony is consistent with the evidence presented while Claimants is inconsistent with his own testimony.
Not surprisingly Mollicone's credibility was repeatedly attacked at the hearing. This Court is well aware that Mollicone testified after being convicted of numerous felony charges in Superior Court Likewise the Court is aware of the lengthy sentence imposed on those charges. Mollicone freely admitted that he would very much like to see that sentence reduced and is even hopeful that this testimony would be a step in the direction of sentence reduction. That being the case this Court sees no advantage to Mollicone to risk a perjury conviction which would most certainly end any hope for his release from incarceration. That is not to imply that everything Mollicone testified to is accepted without question by this Court in fact, this Court finds some of Mollicone's interpretations of events as highly suspect. Nevertheless. Mollicone's testimony has been found to be most helpful by the Court.
Therefore after a careful review of the evidence presented and consideration of the credibility of the witnesses at the hearing, this Court concludes that Claimant either knew or should have known that he was not entering into a traditional business dealing in the usual course of business at Heritage Loan 
Investment and is therefore not entitled to a priority claim. Counsel will prepare an order in accordance with this decision.